IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DOMINIQUE TORNELL GREEN, | ) Civil Action No. 4:04-02228-SB-TER |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| U.S. MARSHALS SERVICE, CHARLESTON | ) |
| COUNTY DETENTION CENTER; P.H.S. | ) |
| MEDICAL CENTER STAFF/COMPANY; | ) |
| ARAMARK INC/FOOD SERVICES; SHERIFF J. | ) |
| AL CANNON FR., ESQ.; CHIEF DEPUTY K.P. | ) |
| NOVAK; AND ROLAND H. WINDHAM, JR., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Dominique Tornell Green, ("plaintiff" or "Green") filed this action *pro se* on

July 23, 2004, under 42 U.S.C. § 1983[1]. The plaintiff is an inmate presently incarcerated at the

Federal Correctional Institution (FCI), Estill. Plaintiff was a federal pretrial detainee housed at the

Charleston County Detention Center (CCDC) during the time of the complaints alleged in this

action. The plaintiff has filed this lawsuit asserting that his constitutional rights were violated while

at the CCDC.[2]

Defendants Cannon, Novak and Windham filed a motion to dismiss on November 17, 2004.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District .

[2] In as much as the complaint requests an award of damages against the Charleston
County Detention Center, the Detention Center is not a "person" for purposes of suit under 42
U.S.C. § 1983.

On December 28, 2004, defendant United States Marshals Service filed a motion for summary judgment pursuant to Rule 56 along with a supporting memorandum. Defendant PHS Medical Staff filed a motion to dismiss or, in the alternative, a motion for summary judgment along with a supporting memorandum on December 28, 2004. The undersigned issued a report and recommendation which was affirmed in part, vacated in part and remanded. Specifically, the Honorable Sol Blatt, Jr., United States District Court Judge, issued an order on October 17, 2005, granting defendants P.H.S. Medical Center's motion for summary judgment and dismissing plaintiff's causes of action against P.H.S. Medical Center; denying defendants CCDC, Cannon, Novak and Windham's motion to dismiss; and, that the matter against the United States Marshal Service not be dismissed based on plaintiff's assertion filed September 21, 2005, that he had recently fully exhausted his administrative remedies.

On March 22, 2006, defendant United States Marshal Service (hereinafter "USMS") filed a motion for summary judgment along with attachments and a memorandum in support. (Document #45). Because plaintiff is proceeding pro se, he was advised on or about March 23, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendant's motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint.  The plaintiff has not filed a response.

On April 20, 2006, defendants Cannon, Novak, and Windham (hereinafter "defendants") filed a motion for summary judgment along with supporting affidavits, attachments, and memorandum. (Document #48). Because plaintiff is proceeding pro se, he was advised on or about April 21, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter

affidavits could result in the dismissal of his complaint.  The plaintiff filed a response on August 21, 2006.

## B.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

3

fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of

law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential

elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.


### D.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process

clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the

Eighth Amendment.   Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).   The rationale for this

distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has
> complied with the constitutional guarantees traditionally associated
> with criminal prosecutions . . . the State does not acquire the power
> to punish with which the Eighth Amendment is concerned until after
> it has secured a formal adjudication of guilt in accordance with the
> due process of law.  Where the State seeks to impose punishment
> without such an adjudication, the pertinent constitutional guarantee
> is the Due Process Clause of the Fourteenth Amendment (citations
> omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be

punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520

(1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it

was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against

that concern, however, is the legitimate security concerns of housing a number of persons prior to

their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet

its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell,

441 U.S. at 538.

4

## II.  UNITED STATES MARSHALS SERVICE

As stated, plaintiff filed a complaint naming as a defendant the USMS. Plaintiff alleges that his constitutional rights were violated when he was denied adequate medical care for his alleged heart condition while housed at CCDC.

Defendant USMS filed a motion for summary judgment on March 22, 2006 (document #45). Plaintiff has not filed a response.

With respect to the claims against the USMS, plaintiff alleges that while a pretrial detainee housed at CCDC, his constitutional rights were violated when he was denied adequate medical care for his alleged heart condition. The CCDC is under contract with the USMS to house federal detainees. (Defendant's memorandum p. 2). Plaintiff was transferred from the Richland County Jail to the CCDC where he remained until September 4, 2003, when he was transferred to the Dorchester County Jail. Defendants assert that on March 22, 2004, plaintiff was transferred back to the CCDC by the USMS until June 3, 2004, when he was transferred to the Federal Bureau of Prisons after pleading guilty and receiving a federal sentence of 292 months.

Defendant USMS asserts that it does not operate the CCDC and is not responsible for the policies and practices at the jail. The USMS contends that it houses prisoners at the CCDC pursuant to an Intergovernmental Agreement between the USMS and the CCDC, and the CCDC is an independent contractor. Therefore, the USMS asserts it and its employees may not be held liable for prison conditions, which are subject solely to the control of the independent contractor. Additionally, defendant USMS states that it has never received any directive or indication that the conditions at the CCDC would warrant the removal of a federal detainee from the facility.

5

**Bivens Claim**

Defendant USMS argues in its motion for summary judgment that plaintiff does not name or allege that any USMS officers violated his rights; he merely names the USMS as a defendant. Additionally, defendant USMS asserts this case is considered under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Defendant USMS contends plaintiff has failed to allege facts sufficient to support any constitutional claims against any USMS officer in his individual capacity. Defendant USMS argues "just as the United States cannot be sued in its own name without its express consent, the USMS cannot be sued eo nomine unless Congress has explicitly or implicitly denominated the USMS as amenable to such suits." Defendant USMS states that any claim against the United States or an officer in his official capacity for money damages under §1331 or the Constitution is barred by the doctrine of sovereign immunity.

A Bivens action cannot lie against either the United States or against federal agents acting in their official capacities. See Doe v. Chao, 306 F.3d 170, 184 (4th Cir.2002) ( Bivens action does not lie against either agencies or officials in their official capacity."); 2006 WL 1967054, at *3 (D.S.C. July 12, 2006) (Anderson, J.). First, "[i]t is axiomatic that the United States may not be sued without consent and that the existence of consent is prerequisite to jurisdiction." United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Second, a suit against a federal agency or federal officer in his or her official capacity is equivalent to a claim against the United States. See Will v. Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The plaintiff does not allege-and the defendant does not concede-that there has been a waiver of sovereign immunity in this action. Thus, to the extent the defendant plaintiff has only named the USMS as a defendant, the claim should be dismissed pursuant to the doctrine of sovereign immunity.

6

As such, plaintiff's action against the USMS should be dismissed with prejudice.

As an alternative, the undersigned will briefly address plaintiff's allegations of medical indifference by the USMS.

### Medical Indifference

As stated, plaintiff filed a complaint naming as a defendant the USMS. Plaintiff alleges that his constitutional rights were violated when he was denied adequate medical care for his alleged heart condition while housed at CCDC.

Defendant USMS filed a motion for summary judgment on March 22, 2006 (document #45). Plaintiff has not filed a response.

With respect to the claims against the USMS, plaintiff alleges that while a pretrial detainee housed at CCDC, his constitutional rights were violated when he was denied adequate medical care for his alleged heart condition. The CCDC is under contract with the USMS to house federal detainees. (Defendant's memorandum p. 2). Plaintiff was transferred from the Richland County Jail to the CCDC where he remained until September 4, 2003, when he was transferred to the Dorchester County Jail. Defendants assert that on March 22, 2004, plaintiff was transferred back to the CCDC by the USMS until June 3, 2004, when he was transferred to the Federal Bureau of Prisons after pleading guilty and receiving a federal sentence of 292 months.

Plaintiff alleges that he and other inmates were given improper medical treatment, he in particular for a heart condition. Plaintiff asserts in his response that during his detention at CCDC, he made formal and informal complaints to prison officials and PHS medical staff that he was suffering serious effects from the dietary menu to which he was required to eat daily. Plaintiff alleges that the complications included bleeding of the stool and respiratory problems. Plaintiff

7

alleges that his complaints were ignored until he was transferred to Dorchester County Detention Center (DCDC). At DCDC, plaintiff alleges he was diagnosed with an "extremely swollen and inflamed heart by an out-side specialist." (Plaintiff's response). Plaintiff alleges that two days after his diagnosis, on or about March 22, 2004, he was again transferred back to CCDC where he informed PHS medical staff of his recently diagnosed heart condition. (Plaintiff's exhibit A). Plaintiff alleges that just prior to his transfer back to CCDC he was kept under hourly monitoring at DCDC. Plaintiff alleges that upon his arrival back to CCDC he was placed into the general population and required to sleep on the floor. Further, plaintiff alleges that the PHS medical staff ordered that he be placed on a regular food diet even after repeated advisement that his condition warranted a cardiac diet. Plaintiff alleges that even after obtaining his medical records from the DCDC, it was four days before they were reviewed by a physician and about twenty-five days before he was placed on a cardiac friendly diet. Further, plaintiff alleges that there is no evidence in his medical record of any type of medially professional follow-up treatment. Plaintiff alleges that upon his transfer to F.C.I. Estill, he received medical care and treatment for his serious heart condition but x-rays show extensive damage to his heart. Thus, plaintiff asserts medical indifference to his serious medical needs.

Plaintiff further alleged that the Honorable Sol Blatt ordered the USMS to transport him for medical care outside of the CCDC during plaintiff's sentencing on April 13, 2004. Plaintiff attached a copy of the hearing transcript wherein a colloquy between the Honorable Sol Blatt, Jr., and an unknown United States Marshal wherein the unknown Marshal advised the Court that he would speak to Danny Lynes and set up the examination as soon as possible.

Defendant USMS submitted the declaration of Danny Lynes who asserts he is a Deputy

United States Marshal (DUSM) assigned to the United States Marshal Service and has held the position since March 1988. Lynes declares that the USMS houses prisoners at the CCDC pursuant to an Intergovernmental Agreement between the USMS and the CCDC. Lynes states that during April 2004, he was unofficially considered the "Deputy in Charge" for the Charleston office. Consequently, Lynes declares other DUSMs frequently sought his assistance in dealing with USMS matters, including CCDC. Lynes asserts that he has no independent recollection of contacting CCDC about plaintiff's heart condition following his sentencing in the United Sates District Court on April 13, 2004. However, Lynes declares that, although he does not recall contacting CCDC about plaintiff's heart condition, it is the practice of the USMS, District of South Carolina, to contact CCDC when the USMS is aware of any medical issues concerning detainees in the custody of the USMS housed at the facility. Lynes states the CCDC has a full-time medical staff, including a physician, at the facility, and the USMS relies upon CCDC medical staff to determine the necessary medical care for detainees held at the facility. Lynes states that the USMS will transport a detainee for medical care outside of CCDC when it is a medical emergency or when the CCDC medical staff determines that it is medically necessary. However, Deputy Danny Lynes states in his declaration that according to plaintiff's medical record provided by the CCDC, that the CCDC's medical staff examined plaintiff on April 14, 2004, and placed plaintiff on a cardiac-friendly diet along with several prescription medications. Lynes states that the medical staff did not indicate plaintiff required medical care outside of CCDC. Therefore, Lynes declares that based on the medical record, plaintiff's medical concerns were communicated to the CCDC, and plaintiff was provided medical care by CCDC medical staff promptly after his sentencing.

Defendant USMS argues that in plaintiff's case, the CCDC medical staff appropriately

9

determined that they could appropriately handle plaintiff's medical needs and no request was made to the USMS for plaintiff to be transported to an outside medical facility.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The

11

district court properly held that <u>Daniels</u> bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  <u>DeShaney v. Winnebago County Department of Social</u> <u>Services</u>, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. <u>Estelle v. Gamble</u>, <u>supra</u>, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also <u>Brooks v. Celeste</u>, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in <u>Farmer v. Brennan</u>, <u>supra</u>, held that "repeated acts of negligence could by themselves constitute deliberate indifference, <u>Farmer</u> teaches otherwise."); <u>Sellers v. Henman</u>, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3rd Cir. 1990); and <u>Smart v. Villar</u>, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendant's actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." <u>Jackson v. Fair</u>, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. <u>See</u> <u>Brown v. Thompson</u>, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  <u>See</u> <u>Smart v. Villar</u>, 547 F. 2d 112 (10th Cir. 1976); <u>Lamb v. Maschner</u>, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical judgment are not subject to judicial review in a § 1983 action. <u>Russell v. Sheffer</u>, 528 F. 2d 318, 319

12

(4th Cir. 1975).

Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim is asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). In addition, plaintiff has failed to identify any medical expert or provide expert testimony regarding the standard of care, defendant's failure to conform to the standard, or the issue of proximate cause. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that defendant USMS's motions for summary judgment be granted as it relates to the plaintiff's claims of medical indifference and/or cruel and unusual conditions of confinement. [3]

## IV.  CCDC, SHERIFF CANNON, CHIEF DEPUTY NOVAK, AND WINDHAM

### A.  FACTS ALLEGED

### CONDITIONS OF CONFINEMENT

Plaintiff alleges a violation of his constitutional rights based on conditions of confinement at the CCDC while housed as a federal pretrial detainee. Plaintiff asserts that the CCDC is overcrowded which results in cruel and unusual punishment. Plaintiff alleges that he has witnessed beatings and mistreatment of other inmates, as well as himself. Plaintiff alleges medical indifference to his medical needs. Plaintiff asserts that he has a heart condition and needed outside evaluation

---

[3] To the extent plaintiff is suing John Doe USMS officer in his individual capacity, the USMS officer is immune as he was acting within the scope of his employment and plaintiff has failed to show otherwise.

13

and/or care which was refused. Plaintiff alleges that the mail room prohibited inmates from receiving legal materials directly from the publisher and/or magazine subscriptions directly from the publisher. Plaintiff alleges that the telephone service provided by Sprint to the CCDC has excessive charges. Lastly, plaintiff alleges that inmates are not given visitation rights with their children.

Plaintiff requests that every defendant named in his lawsuit be forced to abide by contracts, laws, rights of inmates, rules, codes, and any procedure in making a better running CCDC. Plaintiff requests that the court correct all matters which place all inmates in danger or due harm. Plaintiff further requests $250,000.00 per defendant for damages.

On February 14, 2005, plaintiff submitted his affidavit stating that he has been denied prompt and "community standard medical care" which has caused him irreparable harm. Plaintiff attests that he was personally assaulted on two occasions by CCDC officials for no reason. Plaintiff attests that he was subjected to cruel and unusual punishment while at the CCDC due to overcrowding, poor diet which caused him to lose "considerable" weight, that he was denied legal materials, was not allowed private phone conversations with his attorney, and was denied visitation with his immediate family.

Defendants CCDC, Sheriff Cannon, Chief Deputy Novak, and Roland Windham, Jr., filed a motion for summary judgment. Defendants assert that the CCDC holds more detainees and prisoners than its ideal occupancy, but the overcrowding of the CCDC does not amount to punishment to the detainees. Defendants argue that the overcrowding at the CCDC is due to the limited space available in the State to hold detainees and prisoners but is not a form of punishment. Defendants assert there is no express intent to punish detainees when more than the ideal number of persons are placed together.

In his response in opposition to the motion for summary judgment, plaintiff asserts that based

14

on the overcrowding of the CCDC, the plaintiff was subjected to harsh living conditions. Plaintiff further states that "previously he informed this court that by him being refused a cardiac friendly diet as prescribed by PHS Medical Staff, he was subjected to cruel and unusual punishment."

The standard for a summary judgment motion is set out above on pages 3-4 of this report and recommendation.

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eight Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993).  The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819 (1984).  However, to be considered in aggregate, conditions must have mutually enforcing effects that produces deprivation of single, identifiable need such as food, warmth, or exercise.  Wilson v. Seiter, 501 U.S. 294 (1991).  The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)).

Although an issue of fact may exist as to overcrowding, plaintiff has not shown any significant physical or emotional injury as a result of any violation to raise an issue of fact for trial. Plaintiff has not produced any expert testimony or medical records that show he developed any medical condition as a result of the overcrowding. Further, plaintiff has not alleged any specific injury or incident in which excessive force was used on plaintiff. Thus, plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendants. Strickler, supra Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. The undersigned concludes that he has failed to produce any evidence of serious or significant physical or emotional injury resulting from his allegations. Accordingly, the undersigned recommends that summary judgment for the defendants be granted on these claims.

This Court is required to construe pro se complaints and petitions liberally. Such pro se complaints and petitions are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 9 (1980). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). However, even under this less stringent standard, the Complaint in the captioned case is subject to summary dismissal because plaintiff has failed to set forth a claim for which relief can be granted. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim

16

currently cognizable in a federal district court. <u>Weller v. Dep't of Social Svcs.</u>, 901 F.2d 387 (4th Cir. 1990).

Additionally, the inmate must show more than <u>de minimis</u> pain or injury. <u>Id</u>. at 9. Although a plaintiff need not show a significant injury, the court in <u>Norman v. Taylor</u>, 25 F.3d 1259, 1263 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is <u>de minimis</u>." Plaintiff has not shown more than <u>de minimis</u> pain or injury. Specifically, the plaintiff does not present any evidence that he suffered any injury resulting from the allegations that the jail was overcrowded other than bald allegations. Plaintiff has offered no evidence to substantiate these allegations. His bald allegations are insufficient to survive summary judgment. Therefore, it is recommended that summary judgment be granted with respect to the above issues complaining of conditions of confinement.

## E.  LEGAL MATERIALS

In his complaint, plaintiff argues that the mailroom at the CCDC has an unwritten policy which prohibits the inmate population from receiving legal and paperback books directly from the publisher and/or magazines subscriptions directly from the publisher. Plaintiff admits that reading materials are available to detainees through the sign-up list available in the canteen. Thus, plaintiff appears to be arguing specifically about legal materials.

Defendants contend that plaintiff was assisted by council during his time as a federal pretrial detainee. Defendants assert that it is established that the assistance of counsel satisfies the requirement of access to the courts citing <u>U.S. v. Chatham</u>, 584 F.2d 1358 (4th Cir. 1978).

Defendants argue there is no constitutional entitlement to both access to a law library and assistance from counsel citing Lyons v. Powell, 838 F.2d 28 (1st Cir. 1988).

In his response in opposition, plaintiff states that defendants have asserted that he has not shown how he was actually injured by the denial of legal materials. Plaintiff contends that he "needed to review his own paperwork to relay his thought to the attorney but could not do so based on the fact that he was denied access to his legal materials. Which caused the plaintiff to have to extend his court proceedings longer than necessary." (Plaintiff's response p. 3-4)

Generally, states must affirmatively provide prisoners with either law libraries or persons trained in law to prosecute both post-conviction proceedings and civil rights actions. Bounds v. Smith, 430 U.S. 817 (1977); Carter v. Mandel, 573 F.2d 172 (4th Cir. 1978). However, meaningful access to the courts is the touchstone. As well, Bounds, 430 U.S. at 823, did not create an abstract, free-standing right to a law library or legal assistance. To prevail, an inmate must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. The right to access underlying Bounds is narrow. It only extends to suits attacking sentences and challenging conditions of confinement and does not require that the state enable the prisoner to discover grievances or to litigate effectively in court. Lewis v. Casey, 518 U.S.343 (1996). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Id.

The defendants argue that in order to state a claim for the violation of his constitutional right of access to the courts, it is a basic requirement that a prisoner must identify an actual injury resulting from official conduct. Lewis v. Casey, supra. Defendants argue that plaintiff failed to demonstrate how he was actually injured by the supposed denial of legal materials and he had

available assistance of counsel.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged.

In this case, the plaintiff has failed to allege any actual injury by not having direct access to the legal material. In the case <u>Trotman v. York County Detention Center</u>, 2003 WL 23198860 (D.S.C.)), the Court held the following:

> Plaintiff's (a pretrial detainee) allegations relating to the lack of access to a comprehensive law library at the York County Detention Center do not raise a cognizable section 1983 claim. Longstanding case law in this circuit provides that if a pre-trial detainee has an attorney--or *is offered counsel but waives his or her right to counsel*--he or she has no constitutional right of access to a law library or to legal materials when he or she is a pre-trial detainee. *See United States v. Chatman,* 584 F.2d 1358, 1360 (4th Cir.1978). In *United States v. Chatman,* the Court concluded that *Bounds v.. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), was not applicable to a pre-trial detainee:
>
> > We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. * * * *Bounds,* of course, has no direct application to defendant. He was accused of a crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it

offered the defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West,* 557 F.2d 151 (8 Cir.1977).
*United States v. Chatman,* 584 F.2d at 1360 (italics in original). *Cf. Lewis v. Casey,* 64 U.S.L.W. 4587, 135 L.Ed.2d 606, 116 S.Ct. 2174 (1996).

The United States Court of Appeals for the Fourth Circuit has also ruled that the Constitution of the United States does not require every local jail to even have a law library. *See Magee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987). The holding in *Magee v. Waters* is based on the knowledge that county jails are generally short-term facilities, wherein " 'the brevity of confinement does not permit sufficient time for prisoners to petition the courts." ' *Magee v. Waters,* 810 F.2d at 452. *See also Cruz v. Hauck,* 515 F.2d 322, 331-333 (5th Cir.1975), *cert. denied, Andrade v. Hauck,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). In *Cruz v. Hauck,* the Court noted: "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of *the State."* 515 F.2d at 331 (emphasis added). Also on point are *Peterkin v. Jeffes,* 855 F.2d 1021, 1040-41 & nn. 24-25 (3d Cir.1988); and *Sands v. Lewis,* 886 F.2d 1166, 1170-71 (9th Cir.1989)(collecting cases). In any event, the obligation to provide legal assistance to Plaintiff rests with the State of South Carolina, *not* with the named Defendants in the above-captioned case.

In this case, other than his own conclusory statements, plaintiff has failed to submit any sufficient evidence showing any actual injury arising out of the failure of these defendants to provide him with law books and/or legal materials that denied him access to court. He was represented by counsel at the time and responds in opposition to the motion for summary judgment that he could not relay his thoughts to his attorney without legal books and, as a result, his court proceedings were extended longer than necessary. Defendants submitted the affidavit of Ashley E. Dell ("Dell") who attest that she is the Legal Liaison for the CCDC and that legal materials are available to detainees upon reasonable request. Further, Dell attests that she has access to Lexus Nexus which she uses to provide information to detainees when a reasonable request is made. Based on case law and facts

alleged as set out above, the undersigned finds that the plaintiff's constitutional rights have not been violated. Thus, it is recommended that summary judgment be granted on this issue in favor of the defendants.

### THE DETENTION CENTER OVERCHARGING FOR PHONE SERVICE

Plaintiff alleges in his complaint that the telephone service is provided by Sprint and the telephone charges are excessive.

Defendants assert that the telephone services are provided by Sprint by agreement between the CCDC and Sprint. Defendants contend the rates for telephone services are regulated by the FCC. Defendants contend the rate for a local call is less than two dollars and long distance rates differ depending on the distance to where the call is placed and the CCDC. Defendants assert the County of Charleston does keep a portion of the money received from the detainee's phone calls but these rates are rationally related to a legitimate governmental interest. Defendants state the fees collected by Charleston County from such phone use are put back into the Detention Center operations.

The defendants submitted the affidavit of Patsy Gatch (Gatch) who attests that she is with the Charleston County Government and is responsible for the telephone services for detainees at the CCDC. Gatch attests that the phone rates at the CCDC are set by contract between the CCDC and Sprint Telecom. Gatch states that Charleston County does receive proceeds from this service and the rate for a local call is $1.15. Gatch attests that the long distance rate is determined by the distance of the location called from the CCDC and that all rates are made known to the person receiving a call from a detainee before the call is connected. Gatch attests that all rates are regulated by the FCC.

Plaintiff does not appear to address this issue in his response in opposition to the motion for

21

summary judgment.

Plaintiff has not shown that the rates are intended as a punishment to him or other pretrial detainees. The rates are set by the FCC for everyone using the telephone system at the CCDC so plaintiff is not singled out. Therefore, it is recommended this issue be dismissed and defendants' motion for summary judgment granted.


## **VISITATION**

Plaintiff alleges a constitutional violation by the fact inmates are not given the right to be visited by their children. Defendants assert the CCDC does have a policy that children under the age of seventeen years old are not authorized to visit detainees.

In plaintiff's response in opposition to the motion for summary judgment, he responds that "the plaintiff was already aware that he could not have visits from children under the age of seventeen, therefore, he did not have anyone under that age to come and attempt to visit him knowing the jail would not undermin[e] there [sic] policy prohibiting such an occurrence." (Response p. 4).

It is not clear from the pleadings if plaintiff has personally been denied the right to visit with his children. Regardless, neither visitors nor prisoners themselves have a constitutional right to prison visitation. White v. Keller, 438 F.Supp. 110 (D. Md. 1977). Accordingly, it is recommended that defendants' motion for summary judgment be granted and this case dismissed.


## **III.  CONCLUSION**

For the reasons set forth herein, it is RECOMMENDED that defendant United States

22

Marshals Service's motion for summary judgment (document #45) and defendants Cannon, Novak, and Windham's motion for summary judgment (document # 48) be GRANTED. [4]

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 21, 2007
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[4] Any claims for injunctive relief that plaintiff may be seeking became moot when plaintiff was no longer at the CCDC and, thus, no longer subjected to the conditions complained of at the CCDC. Willams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991).